UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONES LANG LASALLE BROKERAGE, INC., <br><br> Plaintiff, <br><br> - against - <br><br> NITYO INFOTECH CORPORATION, <br><br> Defendant. | Index No.: 23-cv-10738 <br><br> **COMPLAINT** |

Plaintiff Jones Lang LaSalle Brokerage, Inc. ("JLL") alleges, by and through its undersigned attorneys, Fried, Frank, Harris, Shriver & Jacobson LLP, upon knowledge as to itself and its own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This case arises out of the refusal by defendant Nityo Infotech Corporation ("Nityo") to pay amounts that are contractually owed to JLL pursuant to a Services Agreement between JLL and Nityo dated July 21, 2022 (the "Services Agreement"). A complete and accurate copy of the Services Agreement is attached hereto as Exhibit 1.

2. In the Services Agreement, Nityo granted JLL exclusive right to arrange for a sublease, assignment, or early termination of Nityo's sublease of numerous floors in the building located at 1675 Broadway, New York, New York.

3. However, after entering into a sublease for a portion of Nityo's leased space, and agreeing to an early termination with respect to the majority of the remaining space, Nityo is refusing to pay JLL the commissions provided for in the Services Agreement.

4. As such, JLL has been forced to bring this action seeking the amounts that are indisputably due under the Services Agreement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum or value of $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as many of the acts, transactions, occurrences and omissions alleged herein occurred in this district. Moreover, the property subject to the Services Agreement is located within this district; the parties conduct business in this district, including but not limited to in connection with the events described herein; and the Services Agreement is governed by the laws of New York State.

## PARTIES

7. Plaintiff JLL is a corporation organized and operated under the laws of Texas with its principal place of business at 200 East Randolph Drive, Chicago, Illinois 60601. JLL is licensed to do business in New York State.

8. Nityo is a corporation organized and operated under the laws of Delaware with its principal place of business at 666 Plainsboro Road, Plainsboro, New Jersey 08536.

## FACTS

**Nityo Enters into an Exclusive Agency Agreement with JLL for its Subleased Space**

9. On or about March 4, 2022, Nityo entered into a sublease (the "Sublease") with non-party MMS USA Holdings, Inc. ("MMS"), a subsidiary of Publicis Groupe S.A. ("Publicis"), pursuant to which Nityo subleased floors 2 through 8, 11 through 14, 16, and 24 through 30 (collectively, the "Subleased Premises") in the building located at 1675 Broadway, New York, New York.

10. Pursuant to the Sublease, Nityo was obligated to pay fixed rent to its landlord, MMS, for the Subleased Premises through June 2031.

11.     In or about July of 2022, Nityo sought assistance from JLL, one of the world's largest real estate brokerage firms, in limiting Nityo's future financial obligations under the Sublease.

12.     To that end, on or about July 24, 2022, Nityo and JLL entered into the Services Agreement pursuant to which Nityo engaged JLL "as its exclusive agent" with the "the exclusive right" to:

> (a) sublease [Nityo]'s leased premises consisting of 488,000 square feet located on the entire 2-8, 11-14 and 24-29th floors plus a portion of the 16th floor of the building located at 1675 Broadway, New York, New York (the "Premises"), (b) arrange for an assignment of all or a portion of [Nityo]'s obligations under its lease for the Premises . . . , or (c) arrange for an agreement between landlord and [Nityo] whereby [Nityo] is relieved of all or a portion of its obligations under the Lease (collectively, the "Services").

Exhibit 1 § 1.1.

13.     The Services Agreement required that Nityo "refer all inquiries to JLL" and "conduct all negotiations through JLL." Exhibit 1 § 1.2.

14.     Pursuant to Section 2 of the Services Agreement, JLL was entitled to a commission if Nityo's obligations under the Sublease were terminated or limited in any way. Specifically, the Services Agreement provided that:

> [i]n the event and each time, whether or not through the efforts of JLL: (a) [Nityo] and a subtenant execute a sublease for some or all of the Premises, (b) an assignee assumes all or part of [Nityo]'s obligations under the [Sublease], or (c) [Nityo] and its landlord enter into an agreement whereby [Nityo] is relieved of all or a portion of its remaining obligation under the [Sublease], [Nityo] agrees to pay JLL a commission . . . .

Exhibit 1 § 2.

15. Exhibit A to the Services Agreement is a commission schedule specifying the compensation that Nityo is required to pay JLL for its services (the "Commission Schedule"). Exhibit 1 at 4.

16. The Commission Schedule sets forth the following "Standard Market Leasing Commission Rates":

- 5.0% of the Base Rent: 1st year of the term or any fraction thereof.
- 4.0% of the Base Rent: 2nd year of the term or any fraction thereof.
- 3.5% of the Base Rent: 3rd year up to and including the 5th year of the term.
- 2.5% of the Base Rent: 6th year up to and including the 10th year of the term.
- 2.0% of the Base Rent: 11th year up to and including the 20th year of the term.

*Id*.

17. The Commission Schedule also provides that, in the event of an early termination of the Sublease, JLL is due "[a] commission equal to 7.5% of the savings that [Nityo] realizes due to the termination." *Id.*

18. Pursuant to Section 8 of the Services Agreement, delinquent payments accrue interest "at the rate of one and one-half percent (1-1/2%) per month from the date due until paid." *Id.* § 8.

19. The Services Agreement was to remain in full force and effect for 365 days (*i.e.*, through July 21, 2023). *Id.* § 4.  However, on or about July 26, 2023, Nityo and JLL entered into the First Amendment to Services Agreement (the "Amendment"), which was effective as of July 21, 2023, extending the term of the Services Agreement through July 22, 2024.  A complete and accurate copy of the Amendment is attached hereto as Exhibit 2.

**JLL Secures a Sublease for Part of Nityo's Subleased Space**

20. From and after the execution of the Services Agreement, JLL performed the services required thereunder, dedicating time and resources to marketing the Premises and engaging with potential subtenants and assignees on behalf of Nityo.

21. One such prospect, ELH MGMT, LLC ("ELH"), agreed to sublease part of the 29th floor of the Premises. JLL was involved in the negotiations, along with ELH's broker, non-party CBRE, Inc. ("CBRE").

22. On or about June 26, 2023, Nityo entered into a sublease with ELH with respect to part of the 29th floor of the Premises (the "ELH Sublease").

23. Thereafter, Nityo received a security deposit in connection with the ELH Sublease, as well as all consents necessary for the ELH Sublease.

24. As set forth on the Commission Schedule to the Services Agreement, because the transaction involved a cooperating broker (CBRE), JLL was entitled to an "[o]verride equal to 50% of the commission calculated in accordance with the Standard Market Leasing Rates, below . . . ." Exhibit 1 at 4.

25. Based on the base rent provided in the ELH Sublease, 50% of the commission calculated in accordance with the Standard Market Leasing Rates is $50,663.84.

26. Accordingly, pursuant to Section 2 of the Services Agreement and the Commission Schedule, Nityo was obligated to pay JLL a commission in connection with the ELH Sublease in the amount of $50,663.84.

**Nityo Negotiates an Early Termination of its Sublease with MMS in Violation of the Services Agreement**

27. While working towards successful execution of the ELH Sublease, JLL continued to market and engage potentially interested parties in connection with the remaining portion of the

Premises, with respect to which Nityo maintained significant lease payment obligations. As a result of JLL's efforts, JLL received multiple offers on Nityo's remaining subleased space.

28. However, while JLL was undertaking these efforts, unbeknownst to JLL, Nityo circumvented JLL and directly negotiated with Publicis/MMS concerning an early termination of the Sublease.

29. Nityo's actions violated the requirement that Nityo "refer all inquiries" to JLL and "conduct all negotiations through JLL," as well as JLL's "exclusive right" under the Services Agreement "to arrange for an agreement between landlord and [Nityo] whereby [Nityo] is relieved of all or a portion of its obligations under the Lease." Exhibit 1 §§ 1.1, 1.2.

30. On or about July 31, 2023, days after the Services Agreement was extended for one year, Nityo informed JLL (in writing) that: "Publicis/MMS Holdings has partially terminated the 1675 Broadway lease. Effective from August 01, 2023, only the Floors 4, 5 and 6 shall be under Nityo and all other floors stands released from Nityo through this termination of the lease by the sub-landlord." A copy of the email from Nityo to JLL is attached hereto as Exhibit 3.

31. Thus, according to Nityo, as of July 31, 2023, Publicis/MMS and Nityo had entered into an agreement to terminate the Sublease with respect to all of floors 2, 3, 7, 8, 11, 12, 13, 14, 16, 24, 25, 26, 27, and 28, and with respect to part of floor 29 (the "Early Termination Agreement").

32. Upon learning of the Early Termination Agreement, JLL indicated that it would be billing Nityo for its fee under the Services Agreement.

33. Specifically, because the Early Termination Agreement relieved Nityo of its obligation to pay rent with respect to 381,968 rentable square feet of space it had previously

6

subleased for the remainder of the Sublease term, JLL was entitled to "[a] commission equal to 7.5% of the savings that [Nityo] realizes due to the termination." Exhibit 1 § 2, *id.* at 4.

34. The total savings realized by Nityo as result of the Early Termination Agreement is $99,231,825.00. Accordingly, pursuant to the Services Agreement and the Commission Schedule, JLL is owed $7,442,382.00 in connection with the Early Termination Agreement.

35. On August 1, 2023, Nityo requested that JLL send Nityo the calculation of the 7.5% fee owed under the Services Agreement.

**Nityo Terminates the Services Agreement in a Calculated Effort to Deprive JLL of its Contractually Mandated Commission**

36. Per Nityo's request, on August 2, 2023, JLL sent Nityo a preliminary calculation of its over $7 million fee for the early termination of the Sublease. At that time, JLL understood that, while agreed upon, the Early Termination Agreement between Nityo and MMS/Publicis was in the process of being memorialized in a written agreement.

37. However, on August 17, 2023 -- less than one month after Nityo had extended the Services Agreement for another year, and less than two weeks after JLL informed Nityo that it was owed over $7 million based on the Early Termination Agreement -- Nityo sent JLL a notice terminating the Services Agreement effective September 16, 2023.

38. Additionally, Nityo purposefully delayed formal execution of a written Early Termination Agreement until after the Services Agreement terminated.

39. Nityo's termination of the Services Agreement and purposeful delay in executing the Early Termination Agreement were part of an effort to avoid paying JLL the commission fee it is owed and deprive JLL of the fruits of the Services Agreement.

**The Commissions Owed to JLL Pursuant to the Services Agreement**

40. On October 2, 2023, JLL sent Nityo an invoice for (a) $50,663.84 in connection with the executed ELH Sublease, and (b) $7,442,382.00 representing 7.5% of the calculated savings realized as result of the Early Termination Agreement.

41. Nityo has refused to pay JLL the foregoing commissions.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Breach of Services Agreement - ELH Sublease)

42. JLL repeats and realleges the allegations in paragraphs 1 through 41 as if fully set forth herein.

43. The Services Agreement is a valid and binding contract between JLL and Nityo.

44. JLL performed all of its obligations under the Services Agreement.

45. On or about June 26, 2023, Nityo entered into the ELH Sublease.

46. Pursuant to the Services Agreement, JLL is due a commission in the amount of $50,663.84 as a result of the ELH Sublease.

47. Nityo has refused to pay $50,663.84 to JLL based on the ELH Sublease.

48. Nityo's conduct constitutes a breach of the express terms of the Services Agreement.

49. As a result of Nityo's breach, JLL has been damaged in an amount to be determined at trial, but not less than $50,663.84, plus interest at the contractual rate of 1.5% per month from and after the date that the obligation accrued.

50. Additionally, pursuant to Section 8 of the Services Agreement, JLL is entitled to reimbursement of all reasonable expenses and attorneys' fees in connection with this action in an amount to be determined.

## SECOND CAUSE OF ACTION
### (Breach of Services Agreement - Early Termination Agreement)

51. JLL repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth herein.

52. The Services Agreement is a valid and binding contract between JLL and Nityo.

53. JLL performed all of its obligations under the Services Agreement.

54. Nityo breached the express terms of the Services Agreement as well as the implied covenant of good faith and fair dealing therein by, among other things, (i) negotiating directly with Publicis/MMS concerning the Early Termination Agreement, (ii) terminating the Services Agreement to avoid paying JLL a commission in connection with the Early Termination Agreement, and (iii) failing to pay JLL's commission in connection with the Early Termination Agreement.

55. As a result of Nityo's breaches, JLL has been damaged in an amount to be determined at trial, but not less than $7,442,382.00, plus interest at the contractual rate of 1.5% per month from and after the date that the obligation accrued.

56. Additionally, pursuant to Section 8 of the Services Agreement, JLL is entitled to reimbursement of all reasonable expenses and attorneys' fees in connection with this action in an amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff JLL prays that a judgment be entered against defendant Nityo as follows:

A. On the First Cause of Action, awarding compensatory damages in an amount to be determined at trial, but not less than $50,663.84;

9

B.	On the Second Cause of Action, awarding compensatory damages in an amount to be determined at trial, but not less than $7,442,382.00;

C.	On the First and Second Causes of Action, awarding JLL its reasonable expenses and attorneys' fees and disbursements pursuant to Section 8 of the Services Agreement in an amount to be determined at trial;

D.	On the First and Second Causes of Action, awarding JLL pre- and post- judgment interest at the contractual rate of 1.5% per month and/or at the interest rate allowable by law; and

E.	Such other and further relief as this Court deems just and proper.


Dated:	New York, New York
	December 8, 2023

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
	Emilie B. Cooper
	Ansel A. Bencze

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
emilie.cooper@friedfrank.com
ansel.bencze@friedfrank.com

Attorneys for Plaintiff
  Jones Lang Lasalle Brokerage, Inc.