# EXHIBIT 1



# SERVICES AGREEMENT

THIS SERVICES AGREEMENT, dated July 21, 2022, is between Nityo Infotech Corp. a Delaware corporation ("Client"), and Jones Lang LaSalle Brokerage, Inc., a Texas corporation ("JLL").

In consideration of the mutual promises set forth herein, Client and JLL agree as follows:

1.	The Services.

1.1	Disposition.  Client employs JLL as its exclusive agent, and with the exclusive right to, (a) sublease Client's leased premises consisting of 488,000 square feet located on the entire 2-8, 11-14 and 24-29th floors plus a portion of the 16th floor of the building located at 1675 Broadway, New York, New York (the "Premises"), (b) arrange for an assignment of all or a portion of Client's obligations under its lease for the Premises (the "Lease"), or (c) arrange for an agreement between landlord and Client whereby Client is relieved of all or a portion of its obligations under the Lease (collectively, the "Services").  The client will keep 30th floor or any other one floor in lieu of the 30th fllor for itself or for its client/s.

1.2	General.   JLL shall perform the Services in accordance with applicable professional standards.  Client shall refer all inquiries to JLL and to conduct all negotiations through JLL (under the supervision, direction and control of Client); but JLL has no authority to obligate Client until expressly authorized in writing by Client.  Peter Riguardi and Mitchell Konsker of JLL (the "Project Team") will perform the Services under this Agreement.  If JLL deems it necessary, JLL will solicit the cooperation of other licensed real estate brokers.  The Project Team may solicit offers for leases, sublease or other transactions from clients of JLL or its affiliates. Client agrees that representatives of JLL or its affiliates including the Project Team may represent one or more other prospective parties to such lease, sublease or transaction, and in such case, the representative of JLL including than the Project Team representing such other party shall be considered a Cooperating Broker for purposes of this Agreement.  All final business decisions shall be made solely by Client.

2.	Commission.	In the event and each time, whether or not through the efforts of JLL: (a) Client and a subtenant execute a sublease for some or all of the Premises, (b) an assignee assumes all or part of Client's obligations under the Lease, or (c) Client and its landlord enter into an agreement whereby Client is relieved of all or a portion of its remaining obligation under the Lease, Client agrees to pay JLL a commission (the " Commission") in accordance with the Commission Schedule attached hereto as EXHIBIT A.  In addition, if a subtenant or assignee for all or a portion of the Premises is represented by any broker other than the Project Team ("Cooperating Broker"), Client shall be responsible for any commissions or other fees payable to that Cooperating Broker.  Client shall pay to JLL, within 30 days of presentation of JLL's invoice, all marketing expenses incurred by JLL and set forth in a marketing expense budget approved by Client in its sole discretion.  JLL will reimburse Client for half of their marketing expenses which amount shall be capped at $50,000.  Such reimbursement shall be paid from the first commissions earned hereunder.

3.	Indemnities.  JLL will defend (with counsel reasonably acceptable to Client), indemnify and hold harmless Client and its affiliates, and each and all of their officers, directors, employees, partners and agents from and against all third party claims, losses, liabilities and expenses, including reasonable attorneys' fees, expert witness fees and court costs ("Loss") to the extent arising out of JLL's gross negligence or intentional misconduct in connection with this Agreement, and any claims by brokers claiming a commission as a result of dealing with JLL.  Client will defend (with counsel reasonably acceptable to JLL), indemnify and hold harmless JLL and its affiliates, and each of their officers, directors, employees, shareholders and agents, from and against all Loss arising out of or in connection with any incorrect information, or any direction or consent, given by Client to JLL, and any claims by brokers claiming a commission as a result of dealing with Client.

4.	Term.  This Agreement shall commence upon the date set forth above and shall remain in effect for 365 days.  After 30 days from the commencement of this Agreement, either party may terminate this Agreement by providing 30 days' written notice to the other party.  JLL shall be entitled to a Commission as provided above with respect to any sublease, Lease assignment or termination, or any other transaction arising from the Services, that is contracted for after the expiration or termination of this Agreement if (a) prior to such expiration or termination JLL has engaged in negotiations with the prospective subtenant or assignee, or landlord (or any of their respective agents), regarding the possibility of a sublease, Lease assignment or termination or a senior executive of the prospective subtenant or assignee toured the Premises; and (b) within 9 months immediately following the expiration or termination of this agreement, sublease, Lease assignment or Lease termination between Client and the sublessee, assignee or landlord is executed.

5.	<u>Other Services</u>.  While other real estate services, including site disposition, development, construction management, property leasing, property management and property financing, may be provided by JLL or its affiliates, they are not within the scope of this Agreement.  These services may be provided by JLL or its affiliates pursuant to separate agreements between Client and the appropriate JLL entity.  While JLL may be doing a survey of building systems for tenant comfort purposes at any property Client intends to lease or acquire, Client acknowledges that JLL is not an expert in, and will not be responsible for providing any advice with respect to, environmental hazards, engineering matters (structural or otherwise) or legal, regulatory or other technical issues.  Client shall hire such experts as it deems necessary to investigate any environmental matters, engineering matters, legal or regulatory matters or other technical matters at any property it intends to lease, purchase or occupy.

6.	<u>Confidentiality; Publicity</u>.  JLL shall keep confidential all non-public information obtained from Client relating to the Services, except as reasonably required in order to perform Services hereunder.  In addition, any and all data and studies created in connection with the Services shall belong to Client. Client agrees that JLL may publicize its role in any transaction Client enters into, provided JLL does not disclose any financial information regarding such transaction.  JLL may use Client's name in a list of clients for marketing and promotional purposes.

7.	<u>Limited Liability</u>.  Each party's liability hereunder shall be limited to its assets; and no partner, director, officer, agent, servant, employee, representative or affiliate of either party shall have any personal liability in connection with this Agreement.  Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if the party has knowledge of the possibility of such damages; and in no event shall JLL's liability to Client exceed the fees paid to JLL in connection with this Agreement.

8.	<u>Miscellaneous</u>.  This Agreement represents the complete and final understanding between JLL and Client with respect to the Services and may not be waived, amended, or modified by either party, unless such waiver, amendment or modification is in writing and signed by both parties.  If any provision of this Agreement is invalid under applicable law, such invalidity shall not affect the other provisions of this Agreement.  This Agreement shall be governed by the laws of the state where the property to be leased is located.  This Agreement is binding upon the parties hereto and their respective successors and assigns; provided, however, this Agreement may not be assigned by either party except to any other entity which acquires all or substantially all of the business and employees of such party.  If either party shall institute any action or proceeding against the other relating to the provisions of this Agreement, the unsuccessful party in the action or proceeding shall reimburse the prevailing party for all reasonable expenses and attorneys' fees and disbursements.  THE PARTIES HEREBY WAIVE TRIAL BY JURY.  Delinquent payments hereunder shall earn interest at the rate of one and one-half percent (1-1/2%) per month from the date due until paid.

9.	<u>Non-Discrimination</u>.  The parties hereto acknowledge that it is illegal to refuse to display, lease or sell to or from any person because of one's membership in a protected class, e.g.: race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental handicap, familial status, or any other protected class and agree not to discriminate unlawfully against anyone in a protected class.

10.	<u>OFAC</u>.  Client represents and warrants that neither it nor any of its employees is a person or entity with whom U.S. entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action.

**Remainder of page intentionally left blank**



IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

JONES LANG LASALLE BROKERAGE, INC.

By: _*Edward McCarthy*_____

Name:_Edward McCarthy_____

Title:__Executive Managing Director_____

Address:  330 Madison Avenue, New York, New York 10017

NITYO INFOTECH CORP.

By:_____[signature]_____

Name:__Akash Tiwari_____

Title:__President_____

Address:  666 Plainsboro Road, Plainsboro, New Jersey 08536

**EXHIBIT A:  COMMISSION SCHEDULE**

The following compensation schedule shall apply to subleases, leases assignments or lease terminations:

- Transaction Without a Cooperating Broker – One full commission, calculated in accordance with the Standard Market Leasing Commission Rates below, shall be paid by Client to JLL.  Notwithstanding the foregoing, should either member of the Project Team represent the prospective subtenant or assignee, they will be considered a Cooperating Broker and the commission shall be calculated as set forth below.

- Transaction With a Cooperating Broker (other than a JLL Broker) – Override equal to 50% of the commission, calculated in accordance with the Standard Market Leasing Commission Rates, below, shall be paid by Client to JLL, in addition to one full commission paid by Client to the Cooperating Broker.

- Transaction With a Cooperating Broker (that is a JLL Broker) – Override equal to 25% of the commission, calculated in accordance with the Standard Market Leasing Commission Rates, below, shall be paid by Client to JLL, in addition to one full commission paid by Client to the Cooperating Broker.

- Early Termination - A commission equal to 7.5% of the savings that Client realizes due to the termination will be paid to JLL by Client.

*Time of Payment*

All Transactions – 100% of the commission due JLL shall be due upon full execution and delivery of the sublease, assignment or termination agreement, the receipt of any security deposit due upon document execution, and receipt of all consents necessary for the effectiveness of such agreement.

*Standard Market Leasing Commission Rates*

| | |
|---|---|
| 5.0% of the Base Rent: | 1st year of the term or any fraction thereof. |
| 4.0% of the Base Rent: | 2nd year of the term or any fraction thereof. |
| 3.5% of the Base Rent: | 3rd year up to and including the 5th year of the term. |
| 2.5% of the Base Rent: | 6th year up to and including the 10th year of the term. |
| 2.0% of the Base Rent: | 11th year up to and including the 20th year of the term. |

For purposes of this Agreement "Base Rent" shall mean the base rent payable by a subtenant (for purposes if this Exhibit, "sublease" shall include any Lease assignment, and "subtenant" shall include any assignee.  The following shall be excluded from Base Rent:

  a) Any free rent or other abatement of rent allowed by Client (however, for purposes of calculating the commission payable to JLL such free rent or abatement shall be amortized over the initial term of the sublease and deducted in equal annual installments from the Base Rent otherwise due and payable during such initial term);



b) Amounts payable, by reason of rent inclusion or otherwise, for electricity, or after hours utilities, utility services, heat and/or air-conditioning or other services;

c) Payments by subtenant of any additional rent escalation charges, for operating expenses (including management recovery cost) of the Property; real estate taxes; wage or labor rate escalation payments, cost of living increases or any other similar payments; or any lease cancellation payments; and

d) Any moving costs of subtenant paid by Client or credited to subtenant.

